ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
{¶ 1} Relator, Delia Coulter, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied her application for temporary total disability compensation for the period May 2, 2001 to September 18, 2001, and to enter an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be granted to order the commission to reconsider and issue a new order in accordance with the requirements of State ex rel. Bowiev. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 458. Respondents have filed objections to the magistrate's decision.
 {¶ 3} In their objections, respondents argue that the magistrate addressed issues not raised by relator based on perceived deficiencies in the C-84 form and speculation as to the doctor's reasonings in completing the form in the manner in which he did.
 {¶ 4} Relator applied for temporary total disability compensation for the period May 2, 2001 through September 18, 2001, based on a C-84 report completed by Dr. William E. Hopkins, and dated November 1, 2001. Dr. Hopkins' report was based on an examination of relator on September 20, 2001. The commission rejected Dr. Hopkins' report because it was not contemporaneous with the requested period of disability compensation; he checked the box indicating relator could return to her former position of employment, but also indicated she could do light-duty work with restrictions; and failed to list any condition that prevented her return to work. The commission further found questionable whether Dr. Hopkins was aware of the allowed conditions of the claim, as they were not correctly listed. The commission found the flaws and inconsistencies apparent on the face of Dr. Hopkins' report precluded its consideration, and, therefore, the commission concluded it did not need to consider whether Dr. Hopkins reviewed the medical records in the file as to the claimed period of disability as required by Bowie.
 {¶ 5} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's findings of fact but rejects the magistrate's conclusions of law. The magistrate concluded that the format of the C-84 form did not allow a doctor to certify a period of disability not contemporaneous with the date of his examination, certification or completion of the form. Thus, the magistrate concluded that, based on the limitations of the C-84 form, it was "conceivable" the doctor would be compelled to answer questions in a narrow and specific manner. As argued by respondents, problems with the format of the C-84 form were not raised by relator before the commission or in her action in mandamus. The magistrate also engaged in speculation and conjecture in determining what Dr. Hopkins might have been thinking; how he thought the questions had to be answered, given that his examination was after the claimed period of disability; and that he might have reviewed other medical reports in the file. Such a degree of speculation is not a basis for finding the commission abused its discretion. Further, the commission properly rejected Dr. Hopkins' report because it incorrectly listed the allowed conditions.
 {¶ 6} Therefore, this court sustains respondents' objections to the magistrate's decision and the requested writ of mandamus is denied.
Objections sustained, writ of mandamus denied.
Lazarus, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Delia Coulter, : Relator, : v. : No. 03AP-341 Industrial Commission of Ohio : (REGULAR CALENDAR) and Findlay Industries, Inc., : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on December 17, 2003. Pencheff Fraley Co., L.P.A., and Mark Heinzerling, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
William W. Johnston, for Findlay Industries, Inc.
 IN MANDAMUS {¶ 7} In this original action, relator, Delia Coulter, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation for the period May 2, 2001 to September 18, 2001, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 8} 1. On February 1, 1997, relator sustained an industrial injury while employed with respondent Findlay Industries, Ind., a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "contusion left hip/thigh; sprain left shoulder; back contusion with abrasion; herniated disc at L2-3; lumbar instability L2-3; major depression; instability (lumbosacral)," and is assigned claim number 97-629053.
 {¶ 9} 2. On May 9, 2001, relator filed a C-84 that had been completed by Elizabeth Fowler, M.D. On the C-84, Dr. Fowler certified a period of TTD to an estimated return-to-work date of May 1, 2001. The C-84 was dated April 4, 2001.
 {¶ 10} 3. On August 13, 2001, at the employer's request, relator was examined by Harvey A. Popovich, M.D. In his written report, Dr. Popovich opined that the industrial injury had reached maximum medical improvement.
 {¶ 11} 4. Following a September 18, 2001 hearing, a district hearing officer ("DHO") issued an order stating:
Temporary Total Disability Compensation is properly payable from 04/04/2001 through 05/01/2001 at this time. Temporary Total Disability Compensation from 05/01/2001 through 09/18/2001 is payable upon submission of proof of disability. Temporary Total Disability Compensation is terminated as of 09/18/2001 based upon a finding of Maximum Medical Improvement supported by the 08/13/2001 examination of Dr. Popovich.
 {¶ 12} 5. The DHO's order of September 18, 2001 was not administratively appealed; thus, it became a final commission order.
 {¶ 13} 6. In the meantime, by letter dated September 17, 2001, the employer offered relator a light duty job in its sewing department beginning September 19, 2001.
 {¶ 14} 7. On November 1, 2001, William E. Hopkins, M.D., completed a C-84 on behalf of relator based upon his examination of September 20, 2001. On the C-84, Dr. Hopkins certified a period of TTD beginning February 1, 1997 (the injury date) to September 20, 2001. Dr. Hopkins indicated that September 20, 2001 was an "actual" return-to-work date. He then wrote "light duty."
The C-84 form poses the following query: "What was the injured worker's position of employment at the time of injury?" In response to this query, Dr. Hopkins wrote "laborer."
The next query on the C-84 asks: "Is the injured worker able to return to this position of employment?" In response, Dr. Hopkins placed a checkmark inside the "Yes" box.
The next query on the C-84 asks: "Is the injured worker able to return to other employment including light duty, alternative work, modified work or transitional work?" In response, Dr. Hopkins placed a checkmark inside the "Yes" box.
The next query on the C-84 states: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response to this query, Dr. Hopkins left the response lines blank.
The next query on the C-84 states: "List ICD-9 Codes with narrative diagnosis(es) for other allowed conditions being treated." In response, Dr. Hopkins wrote:
 924.01 contusion hip 840.9 sprain, shoulder 922.31 contusion lumbar region 722.10 sciatica 724.6 pain, sacroiliac
 {¶ 15} 8. Dr. Hopkins' C-84 was submitted to the self-insured employer for payment of TTD compensation. By letter dated March 8, 2002, the employer stated that it contested further TTD compensation and requested that the matter be set for hearing.
 {¶ 16} 9. Following an April 4, 2002 hearing, a DHO issued an order granting TTD compensation from May 2, 2001 to September 18, 2001 based upon Dr. Hopkins' November 1, 2001 C-84 report.
 {¶ 17} 10. The employer administratively appealed the April 4, 2002 DHO's order.
 {¶ 18} 11. The record before this court contains a series of typewritten "progress notes" written by physicians at the Medical College Hospitals. Dr. Fowler authored progress notes following examinations of and/or consultations with relator on January 31, 2001, February 28, 2001, and March 21, 2001. Noor Pirzada, M.D., authored a progress note on May 15, 2001. James S. Bassett, Jr., M.D., authored a progress note on August 22, 2001. Dr. Hopkins is listed as being copied on all of the progress notes from Drs. Fowler, Pirzada, and Bassett. Dr. Bassett's August 22, 2001 progress note states:
HISTORY OF PRESENT ILLNESS: The patient is a 40-year-old, Hispanic female with a history of chronic intractable low back pain. She had been seen almost exclusively by Dr. Fowler for sometime. She has had two previous back surgeries and had multiple injections in the past without any significant improvement. She has been on Oxycontin in the past and has been most recently changed to Methadone. She was on 10 mg p.o.t.i.d. Her symptoms seem to be reasonably controlled. The patient had also been tried on a Duragesic patch which was not beneficial. In Dr. Fowler's last note, she had referred her for aquatic therapy and evaluation by neurosurgery. The neurosurgical evaluation was pending. After review of the chart, I feel the patient has relatively few treatment options that remain. This was discussed with the patient.
ASSESSMENT: Post laminectomy syndrome with intractable low back pain. While I have not taken care of this patient after review of the records, I think the patient is most likely at maximal medical benefit. A chronic intensive pain program has been discussed with the patient by Dr. Fowler. Un-fortunately she has a small child and is unable to participate in such a program.
PLAN: We will continue Methadone 10 mg p.o.t.i.d. as prescribed by Dr. Fowler. At this point, again I feel we have little else to offer the patient. The patient was informed that Dr. Fowler will not be available in clinic for an undetermined period of time. If the patient's primary care physician was willing to write for her Methadone, she does not need to be seen by me in clinic. If her primary care physician is unwilling to do so, I would ask the patient to return for three month follow ups to monitor medications.
 {¶ 19} 12. Following a May 16, 2002 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order of April 4, 2002 is "modified." The SHO's order states:
* * * [T]he C-84, filed 01/22/2002, is GRANTED to the extent of this order.
The prior order of the District Hearing Officer 09/18/2001 granted payment of Temporary Total Disability Compensation 05/02/2001 through 09/18/2001 contingent upon sufficient proof. The Staff Hearing Officer finds that the weight of the evidence indicates that claimant has submitted sufficient proof and Temporary Total Disability Compensation is ordered paid 05/02/2001 through 05/18/2001. * * *
The Staff Hearing [O]fficer relies upon the notes of Dr. Fowler, 01/20/2001, 05/15/2001, 08/29/2001, et.al., as well as the 05/15/2002 report of Dr. Birzada [sic] and the reports of Dr. Hopkins 11/01/2001 through 05/02/2002 and Dr. Bassett 08/22/2001.
The Staff Hearing Officer notes that the majority of conditions indicated on the C-84 are indeed recognized in this claim; the balance of conditions do not append [sic] to be inconsistent with a low back injury.
The Staff Hearing Officer infers that Dr. Hopkins relied upon the findings of Dr. Fowler.
(Emphasis sic.)
 {¶ 20} 13. The employer administratively appealed the May 16, 2002 SHO's order to the three-member commission. Following an October 29, 2002 hearing, the commission issued an order vacating the SHO's order of May 16, 2002, and denying TTD compensation from May 2, 2001 through September 18, 2001. The commission's order states:
The closed period of temporary total disability in dispute before this Commission is the period from 05/02/2001 through 09/18/2001.
The Industrial Commission finds that the C-84 report of attending physician, Dr. William E. Hopkins, M.D., dated 11/01/2001, submitted to support the alleged period of disability is in fact not "some evidence" upon which to base an award. The Industrial Commission rejects the C-84 report for three reasons. First, Dr. Hopkins noted on the C-84, dated 11/01/2001, that he last examined the injured worker on 09/20/2001. Considering that the disability period in dispute is from 05/02/2001 through 09/18/2001 — a period over which Dr. Hopkins indeed did not examine the injured worker — the Industrial Commission does not find the C-84 persuasive since Dr. Hopkins' examination was not contemporaneous with the claimed period of disability. Second, Dr. Hopkins checked the box on the C-84 indicating that the injured worker could return to her former position of employment. Yet, Dr. Hopkins also checked the box on the C-84 indicating that the injured worker could return to light duty, and Dr. Hopkins listed the injured worker's restrictions. Third, in the area on the C-84 where a physician is to list the conditions that prevent the injured worker from returning to work, Dr. Hopkins listed nothing. Instead, Dr. Hopkins listed conditions under that area in an area for "other allowed conditions being treated." Not only does the Industrial Commission find that this detracts from the credibility of the C-84, it is questionable whether Dr. Hopkins is in fact aware of the injured worker's allowed conditions because although he lists the ICD-9 Codes that are allowed in the injured worker's claim, he does not correctly list the allowed conditions. For example, Dr. Hopkins lists "sciatica" as an allowed condition. However, "sciatica" is not an allowed condition in this claim. There has not been any subsequent medical evidence from Dr. Hopkins submitted on behalf of the injured worker to clear up these inconsistencies.
In the case of Bowie v. Greater Cleveland RegionalTransit Auth. (1996), 75 Ohio St.3d 458, 460, the Ohio Supreme Court cautioned:
(C)ertain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time.
Here, the 11/01/2001 C-84 report in dispute is not based on an examination performed contemporaneously with the alleged period of disability. The Industrial Commission finds that given the flaws and inconsistencies on the very face of the evidence — the 11/01/2001 C-84 — submitted to support temporary total disability, the C-84 is rejected, and there is no need to address the question of whether Dr. Hopkins reviewed the medical evidence relative to the claimed period of disability. Therefore, the Industrial Commission finds that the injured worker has not met her burden of proving entitlement to temporary total disability. Accordingly, for the above-stated reasons, the injured worker's request for temporary total disability compensation from 05/02/2001 through 09/18/2001 is denied.
 {¶ 21} 14. On April 9, 2003, relator, Delia Coulter, filed this mandamus action.
Conclusions of Law:
 {¶ 22} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 23} In State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630, the court defined temporary total disability under R.C. 4123.56 as a disability which prevents a worker from returning to his or her former position of employment. The former position of employment is the group of tasks and responsibilities making up the duties of the employee at the time of his injury. Id. at 632. Speaking of the Ramirez test for determining TTD, the court in State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305, at ¶ 33, explains:
* * * The test itself does no more than fix the demands of the former position as the standard by which to gauge the claimant's medical impairment in disability terms; it has absolutely nothing to do with conditioning eligibility for TTD compensation on the actual availability of the former position of employment.
 {¶ 24} The C-84 form was designed to elicit information from the examining physician in keeping with the Ramirez test for temporary total disability. The C-84 form asks the examining physician to set forth the former position of employment and to indicate by checkmark whether the injured worker is able to return to that position of employment.
 {¶ 25} Apparently, the C-84 form was not designed for the scenario in which the physician wants to certify a period of disability that is not contemporaneous with the date of his certification or completion of the C-84. The query "Is the injured worker able to return to this position of employment?" is presented in the present tense. There is no similar query on the form using the past tense. That is to say, the C-84 form does not ask the physician "Was the injured worker able to return to this position?"
 {¶ 26} Thus, where the doctor is aware at the time of his retrospective disability certification that the injured worker has returned to work, it is conceivable that the doctor would feel compelled to respond "Yes" to the query "Is the injured worker able to return to this position of employment?" It is also conceivable in that scenario that the doctor would feel compelled to list no allowed conditions in response to the query "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." That is, if the doctor is aware that the claimant has returned to work as of the date the doctor is completing the C-84 form, he might feel that it is inappropriate to list conditions being treated which prevent return to work.
 {¶ 27} In the magistrate's view, the above analysis renders invalid the commission's second and third reasons for rejecting the C-84. The magistrate will now address the commission's first reason for rejecting the C-84 which is premised upon State exrel. Bowie v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 458.
 {¶ 28} In Bowie, the claimant, Van Roy Bowie ("Bowie") was injured on January 17, 1990. He received emergency room treatment which generated an emergency room report. Two days later, Bowie visited Dr. McFadden, a chiropractor, who issued a narrative report of his examination. Dr. McFadden also completed commission forms certifying TTD from the date of injury to June 4, 1990.
 {¶ 29} On July 12, 1990, almost seven months after the injury, Bowie was examined by Dr. Katz. Dr. Katz found no abnormalities, and further concluded:
"* * * There is no real indication that the patient should have been out of work at any time after the incident in January according to the records because of the lower back problems. There were no objective findings when he was seen in the emergency room and there certainly were no findings now. He still remains out of work. I feel no treatment is required and he can go back to work at this time."
Id. at 459.
 {¶ 30} In Bowie, the commission denied TTD compensation from January 18, 1990 to May 31, 1990, based upon Dr. Katz's report. Bowie filed a mandamus action in this court. This court denied the writ after finding that the commission's denial of TTD compensation was based upon some evidence. Bowie appealed as of right to the Supreme Court of Ohio.
 {¶ 31} Upon review, the Supreme Court found it necessary to return the cause to the commission for further consideration and an amended order. The Bowie court explained:
This controversy centers around Dr. Katz's report, which was prepared after the claimed period of disability had ended. Claimant asserts that a report which post-dates the period of disability can never constitute" some evidence" upon which the commission can rely. We disagree.
There are parallels between an examining doctor who offers a retroactive opinion and a doctor who renders an opinion as to a claimant's current status without examination. The evident-iary acceptability of the latter is long-settled, having been equated to an expert's response to a hypothetical question. State exrel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55 * * *;State ex rel. Hughes v. Goodyear Tire Rubber Co. (1986),26 Ohio St.3d 71 * * *; State ex rel. Lampkins v. Dayton Malleable,Inc. (1989), 45 Ohio St.3d 14 * * *.
As in the case of a non-examining physician, however, certain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time. In this instance, the conspicuous reference to the emergency room reports coupled with the equally conspicuous lack of reference to Dr. McFadden's reports suggests to us that Dr. Katz may have overlooked the latter. We cannot, therefore, find that Dr. Katz's report is "some evidence" upon which the commission could rely.
Removal of Dr. Katz's report, however, does not compel an award of temporary total disability compensation. As we observed inLampkins, supra:
"Any award of temporary total disability compensation must be supported by some evidence establishing that a temporary condition precludes the return to the former position of employment. * * * Therefore, a lack of evidence supporting a denial of temporary total disability benefits cannot auto-matically translate into some evidence supporting an award of such benefits. Recognizing that the determination of disability is a commission function, we thus remand the cause to the commission to determine whether appellee qualifies for temporary total disability compensation and to identify the evidence supporting its finding." Id. at 16-17 * * *.
We find a similar disposition to be warranted in this case. Accordingly, the judgment of the court of appeals is reversed and a limited writ is issued returning the cause to the commission for further consideration and amended order.
Id. at 460-461.
 {¶ 32} Here, while the commission's order cites to and quotes from Bowie, the commission incorrectly concluded that a Bowie
analysis was unwarranted given the other perceived flaws in the C-84. The commission's order, in this regard, states:
Here, the 11/01/2001 C-84 report in dispute is not based on an examination performed contemporaneously with the alleged period of disability. The Industrial Commission finds that given the flaws and inconsistencies on the very face of the evidence — the 11/01/2001 C-84 — submitted to support temporary total disability, the C-84 is rejected, and there is no need to address the question of whether Dr. Hopkins reviewed the medical evidence relative to the claimed period of disability. * * *
 {¶ 33} Interestingly, the SHO addressed the Bowie issue by stating that he "infers that Dr. Hopkins relied upon the findings of Dr. Fowler."
 {¶ 34} As relator points out here, Dr. Hopkins remained the physician of record during the time that relator was being evaluated and treated by various physicians, including Dr. Fowler, at the Medical College Hospitals. Those reports indicate that Dr. Hopkins was copied. Thus, it is conceivable that Dr. Hopkins had reviewed those reports of record when he certified a noncontemporaneous period of disability on November 1, 2001.
 {¶ 35} As previously noted, the C-84 form is not designed to assist the physician who is attempting to certify a noncontemporaneous period of disability. Yet, the commission rejected the C-84 in large part on grounds relating to the difficulty in using the C-84 for such purpose.
 {¶ 36} The commission's order indicates that it failed to make the type of inquiry that Bowie requires. Clearly, underBowie, Dr. Hopkins could have validly certified the noncontemporaneous period of disability had he reviewed the medical evidence of record relating to that period of disability. There was evidence in the record inferring that, as the physician of record, he had done so.
 {¶ 37} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its October 29, 2002 order, to conduct the inquiry that Bowie requires, and to thereafter issue a new order either granting or denying TTD compensation from May 2, 2001 to September 18, 2001.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE